IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JAMES NICHOLSON                                                                         PLAINTIFF

VS.                                                                  CIVIL ACTION NO. 3:04CV560S

CHRISTOPHER EPPS, LINDA HOLMAN,
CORRECTIONAL MEDICAL SERVICES, DR.
JOHN BEARRY and DR. KENTRELL LIDDELL                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This is a case brought by a prisoner in state custody, who is contesting the conditions of his confinement – specifically, his medical care – pursuant to 42 U.S.C. § 1983. At the Omnibus Hearing that was held in this case, the parties executed a Consent to the Exercise of Jurisdiction by a United States Magistrate Judge. On February 13, 2006, District Judge Tom S. Lee referred this matter to the undersigned for the purpose of conducting all proceedings, including the entry of judgment. The Defendants have now moved for summary judgment on the issues raised by the Complaint. Having reviewed that Motion and the attachments, and for the reasons more fully set out below, the undersigned is of the opinion that the Motion for Summary Judgment should be granted, and this case should be dismissed with prejudice.

The Plaintiff, James Nicholson, has been held in the custody of the Mississippi Department of Corrections since January, 2003. Nicholson claims that he was originally classified at CMCF as Medical Class I, when he should have been Class III. When he was later moved to the South Mississippi Correctional Institution, he was ordered to work, over his objection, chopping tree trunks, resulting in an injury to his back. Additionally, after working, he returned to take a shower and noticed something wrong with the water, which was brown and had a foul smell. About five

days later, his face swelled up and he was later told that he had a serious infection to his face and ears as the result of contact with the water. Nicholson also says that a neurologist has recommended surgery on his back, which has not been performed. He testified at the Omnibus Hearing that he has been prescribed Neurontin for his back pain, but that it is still difficult for him to get out of bed because of the pain he suffers. For these reasons, Nicholson claims that his medical care while incarcerated has been constitutionally inadequate.

The Defendants have moved for summary judgment, which is only appropriate where there is no genuine issue of material fact and the Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering such a motion, all of the undisputed facts, and any inferences that may be drawn from those facts, "must be viewed in the light most favorable to the non-moving party," who is entitled "to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorable to him." *Miller v. Leathers*, 913 F.2d 1085, 1086 (4th Cir. 1990), quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979); *see also Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999). However, the court only considers those facts that are relevant and material, in light of the substantive law governing the claim. *Miles v. Denver Public Schools*, 944 F.2d 773, 775 (10th Cir. 1991). The substantive law establishes those elements on which a plaintiff bears the burden of proof at trial; only facts relevant to those elements of proof are considered for summary judgment purposes. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). As to the relevant, material facts, "[w]hen the moving party produces credible evidence that establishes there is no genuine issue of material fact, the opposing party must produce specific facts demonstrating a

genuine issue for trial." *Woods v. Rhodes*, 994 F.2d 494, 499 (8th Cir. 1993).  A mere scintilla of evidence will be insufficient to preclude summary judgment; there must be sufficient evidence on which a factfinder could find for the plaintiff.  *Stewart v. Murphy*, 174 F.3d 530 (5th Cir. 1999).

      The Defendants' Motion is based on their contention that the undisputed material evidence shows that they did not violate 42 U.S.C. §1983, which prohibits the deprivation of constitutional rights under color of state law.  Nicholson claims that the Defendants violated his Eighth Amendment right to be free from excessive or unusual punishment.  As the United States Supreme Court has taught, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  The amendment's protection extends to prohibit deprivations that are not specifically a part of a prison sentence, but are suffered as the result of imprisonment.  *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991), citing *Estelle v. Gamble*, 429 U.S. 97 (1976).  The amendment requires prison officials to provide humane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 824, 832 (1994).

      When a complaint involves conditions that are an element of confinement, as opposed to those that are a part of punishment, an inquiry must be made into the state of mind of the defendant prison officials.  *Wilson*, 501 U.S. at 300-02.  For such a claim to be viable, the official must exhibit "deliberate indifference" to the welfare of the inmate.  *Wilson*, 501 U.S. at 303.  The elements of proof in a case involving conditions of confinement are twofold and include: (1) an objective component, under which the inmate must prove his exposure to a harm or injury that violates contemporaneous standards of decency; and (2) a subjective component, under which the inmate

must prove that the prison authorities' current conduct evidences a deliberate indifference to that exposure. *Helling*, 509 U.S. at 35-36.

The Fifth Circuit Court of Appeals has clearly stated, "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). Thus, to establish a claim of deliberate indifference, a prisoner must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Gobert*, 463 F.3d at 346, quoting *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference is a difficult standard to meet. *Gobert*, 463 F.3d at 346.

Here, Nicholson complains that prison officials were deliberately indifferent to his back injury and subsequent complaints of pain, even to the point of denying him needed back surgery. In support of their Motion, the Defendants have submitted Nicholson's prison medical records from early 2003 to late 2005. Those records constitute a stack of papers almost 2 inches tall. They show that Nicholson was frequently seen by the medical staff and treated for a variety of ailments, including his back problems and the ear infection he contracted during the early part of his incarceration. Numerous tests have been performed, including x-rays of his spine on October 28, 2003; November 7, 2003; and September 1, 2005. None of these x-rays revealed any significant abnormality. Nicholson received a CT scan of his head in December, 2003, and it likewise revealed no abnormality. On February 20, 2004, doctors performed a thoracic spine and a brain MRI, neither of which revealed any medical problem of significance.

However, because of Nicholson's continued complaints of pain and weakness, he was referred to the Greenwood Neurology Clinic for evaluation in February, 2004. Nicholson did sign a Consent for Surgery at that time, and this event may have caused him to believe that he was to receive surgery for his back complaints. However, the form specifically states that the surgical procedure to be performed was a lumbar spinal tap. A lab test of that fluid revealed an extremely low level of Vitamin B12, and Nicholson has been successfully treated since then for that deficiency. The neurologist recommended that Nicholson be evaluated by a neurosurgeon, and he was sent to Central Mississippi Neurosurgery in May, 2004. Dr. E. Thomas Cullom, III, examined him and evaluated his condition as follows:

> This is a 45-year-old who apparently reports that he injured his back pulling tree stumps. He subsequently along the way was evaluated by a neurologist and found to have a B12 deficiency and was thought to have subacute combined degeneration. He was started on B12 injections and appears to be making good progress. He also apparently had an MRI of the thoracic as well as the lumbar spine. On exam today I cannot find a sensory level. His strength in the lower extremities appears to be full. Sensory wise he has some diminished sensation to pin prick from the knees down to the ankles. His reflexes are 2+. His gait appears fairly normal even without his quad cane. I reviewed his MRI scan which shows a couple of bulges in the thoracic spine which are really not all that impressive and don't need surgery because they are not causing any significant compression. He does have a degenerated disc at L5-S1 which is protruding out slightly, but I am not impressed that there is any compression of the nerve roots at this level either. I think that he is making good progress with the B12 deficiency and probably should continue with the injections. **I don't think he needs a spine operation at this point.** [Emphasis added.]

Two months after this examination and evaluation, Nicholson filed this lawsuit claiming that he was being denied recommended surgery on his spine.

In opposition to the Defendants' Motion, Nicholson argues that he was improperly classified as to his medical condition, which caused him to be improperly put to work, thereby injuring his spine. However, the medical records simply do not support his claim of an injury while working,

5

but, instead, show that his problems are related to a vitamin deficiency. He also complains about not receiving orthopedic shoes, however, the medical staff considered that request and determined that he did not need them. These sort of unsubstantiated, conclusory allegations are simply insufficient to defeat the evidence provided by the medical records as to the material, primary question of whether the medical staff improperly and unconstitutionally denied Nicholson medical care. *Hall v. Thomas*, 190 F.3d at 698. On the contrary, the records show that Nicholson has received extensive, continuous care. There is no indication that the medical staff at any MDOC facility where he was housed refused to treat him, ignored his complaints, or intentionally treated him incorrectly. While Nicholson may disagree with his treatment, or be unhappy with it, those complaints are not grounds for an Eighth Amendment claim. For these reasons, the court finds that Nicholson has not stated a claim on which relief may be granted under 42 U.S.C. §1983, and his case should be dismissed with prejudice.

IT IS HEREBY ORDERED that this matter should be dismissed with prejudice and that this dismissal should count as a strike for purposes of 28 U.S.C. §1915. In accordance with Fed. R. Civ. P. 58, a separate judgment will be entered.

IT IS SO ORDERED, this the 18th day of January, 2007.

                                              S/James C. Sumner
                                     UNITED STATES MAGISTRATE JUDGE